# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TONOPAH L. SMITH,                    )<br>                                                            )<br>    **Plaintiff,**                              )<br>                                                            )<br>    v.                                                  )<br>                                                            )<br> CAROLYN W. COLVIN,                )<br> **Acting Commissioner of Social Security,**  )<br>                                                            )<br>    **Defendant.**                          ) | Civil Action No. 3:14-cv-01602<br>Judge Nixon / Knowles |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Pleadings. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 14.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her applications for DIB and SSI on May 18, 2011, alleging that she had

been disabled since May 18, 2010, due to "degenerative disc disease"; "bulging disc in back"; "arthritis in back"; "stenosis in neck"; "limited use of shoulders"; "pain and loss of grip in hands"; "left knee weakness"; "severe edema in feet, ankles and lower legs"; and "hernia in stomach." Docket No. 10, Attachment ("TR"), TR 150-56, 157-63, 182. Plaintiff's applications were denied both initially (TR 79, 80) and upon reconsideration (TR 81, 82). Plaintiff subsequently requested (TR 75-76) and received (TR 26-50) a hearing. Plaintiff's hearing was conducted on January 9, 2013, by Administrative Law Judge ("ALJ") Shannon H. Smith. TR 26-50. Plaintiff and vocational expert ("VE"), Linda Jones, appeared and testified. *Id.*

On February 12, 2013, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 12-25. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since May 18, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

2

> Specifically, the claimant can lift and carry 10-15 pounds occasionally; cannot climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs, stoop, crouch, kneel; can frequently balance; and frequently perform overhead reaching bilaterally with the upper extremities.
>
> 6. The claimant is capable of performing past relevant work as a Cashier I. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from May 18, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 17-21.

On February 27, 2013, Plaintiff timely filed a request for review of the hearing decision. TR 7-11. On June 11, 2014, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the

3

administrative hearing process. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age,

education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

> residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by failing to provide "good reasons" for according "little weight" to the medical opinion of her treating physician, Dr. James Seeley. Docket No. 13. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

### 1. Weight Accorded to Opinion of Plaintiff's Treating Physician

Plaintiff argues that the ALJ failed to provide "good reasons" for according "little weight" to the opinions rendered in the Medical Source Statement ("MSS") completed by her treating physician, Dr. James Seeley. Docket No. 13 at 6. Specifically, Plaintiff contends that

the ALJ's stated rationale that: (1) Dr. Seeley's medical records "did not document anything remarkable regarding a back impairment" and (2) Plaintiff "primarily saw [Dr. Seeley] for acute illnesses, respiratory illnesses and medication refills," is not supported by the evidence of record. *Id.* at 8. In particular, Plaintiff maintains that the record shows that: (1) she saw Dr. Seeley on multiple occasions expressly for back pain; (2) her visits with Dr. Seeley note "continued back pain with limited range of motion, positive straight leg raises and difficulty performing activities of daily living"; (3) her June 2010 MRIs ordered by Dr. Seeley revealed "levoscoliosis of the thoracic spine with marked space narrowing at T11-T12; moderate central canal stenosis and moderate right foraminal stenosis cause[d] by a concentric disc bulge effecting the L1 nerve root and cervical muscles spasms with disc bulges and stenosis at C4-C5 and C5-C7"; and (4) Dr. Seeley documented her physical therapy and pain management, which "did not provide a significant improvement in her symptoms." *Id.* (*referencing* TR 296, 298, 300, 302, 304, 323-24, 268-71, 217).

Plaintiff also argues that "the mere fact that Dr. Seeley's opinion differs from Dr. Gomez's opinion is not a valid reason for affording his opinion little weight." *Id.* at 8-9. Plaintiff maintains that the Sixth Circuit "has held that even when there is a conflicting opinion, an administrative judge cannot decline to give a treating source's opinion controlling weight simply because another physician has issued a different opinion." *Id.* at 8 (*citing Henley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)). Plaintiff further contends that Dr. Gomez's consultative findings "tend to give weight to the fact that [she] was suffering from cervical, thoracic and lumbar disc disease which negatively impacted her abilities to perform activities of daily living." *Id.* at 9. Specifically, Plaintiff points out that Dr. Gomez noted in his evaluation

8

that she demonstrated a decreased range of motion of the neck, hips, knees, and lumbar spine; positive straight leg raises; a limping gait; and difficulty getting on and off the exam table, walking on her heels or toes, and squatting. *Id.* (*referencing* 286-290). Plaintiff asserts that Dr. Seeley has treated her chronic pain and observed her regularly since at least 2010, and therefore argues that he is "'most able to provide a detailed, longitudinal picture' of her condition and limitations" compared to an examining doctor who saw her only once. *Id.* (*citing* 20 CFR § 404.1527(c)(2)).

Defendant responds that the ALJ properly considered Dr. Seeley's MSS opinion and "found that it was due little weight as the medical records did not support the statements and did not provide anything remarkable in regards to back treatment." Docket No. 14 at 4-5. Specifically, Defendant points out that the ALJ noted in her decision that: (1) Plaintiff had completed physical therapy with "some improvement"; (2) Plaintiff's MRI and x-ray findings were "fairly mild"; (3) Dr. Vaughn Allen had seen Plaintiff in October 2010 and referred her for pain management, but the record indicates that "Plaintiff fail[ed] to follow through with the treatment recommendations"; and (4) there was a significant gap in Plaintiff's treatment from October 2010 until "late 2011." *Id.* (*referencing* TR 19-20, 217, 268-75, 285, 296). Defendant concedes that Plaintiff received further care for her back after her gap in treatment, but argues that "this is not inconsistent with the ALJ's findings, as the ALJ did find that this impairment was severe and fairly limiting." *Id.* at 6 (*referencing* TR 17-20). Defendant argues that "the ALJ's evaluation of Dr. Seeley's rather extreme opinion must be viewed with the analysis that preceded it," and asserts that Dr. Seeley's opinion was "properly discredited" for its inconsistency with the treatment record and the record as a whole. *Id.* at 5-6.

9

Defendant additionally responds that the ALJ appropriately noted that Dr. Seeley's MSS opinion was inconsistent with Dr. Albert Gomez's consultative examination report. *Id.* at 7. Defendant recounts that Dr. Gomez, in his consultative examination report, opined that Plaintiff "could lift up to 15 pounds and sit or stand at least six hours per day" and indicated that: (1) Plaintiff walked with a limp but required no assistive devices during her examination; (2) Plaintiff's back was only "moderately tender"; and (3) there were "no significant neurological focal findings, although Plaintiff did not walk on heels and toes, or squat." *Id.* at 7 (*referencing* TR 287-88). Defendant argues that contrary to Plaintiff's argument, the ALJ did not accord little weight to Dr. Seely's MSS opinion "merely because it was different" than Dr. Gomez's opinion, but rather, because of "the lack of consistency with treatment notes, Plaintiff's significant gap in treatment, the minimal objective findings, and Plaintiff's failure to follow up with a pain management doctor." *Id.* (*referencing* TR 19-20). Defendant contends that the ALJ provided "good reasons" for the weight given to Dr. Seeley's MSS opinion, because a lack of supporting objective evidence and inconsistency with other evidence are two "significant factor[s] that the ALJ may consider when evaluating any medical opinion." *Id.* (*citing* 20 CFR § 404.1527(c)(3)-(4)).

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to

the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[2] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other

11

F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (*quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, she is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

On November 16, 2011, Plaintiff's treating physician, Dr. James Seeley, completed a Medical Source Statement (Physical) report regarding Plaintiff, in which he opined that Plaintiff could never sit, stand, or walk in an eight-hour workday; could never lift or carry any weight; and could never bend, push, pull, or use hands for gross manipulation, but could occasionally use hands for fine manipulation. TR 320-22. Dr. Seely also opined that Plaintiff would need to

---

opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. April 28, 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

avoid environmental limitations such as heights, chemicals, fumes, dust, humidity, noise, vibration, moving machinery, and temperature extremes. *Id.* Dr. Seely additionally opined that Plaintiff's condition would cause her "severe" pain; that her concentration and ability to focus were adversely affected by her pain; that she would need to lie down for sixty minutes at a time, three times per day; that she would need to elevate her legs for thirty minutes at a time, six times per day; and that she would need to take unscheduled breaks beyond the normal breaks offered. *Id.* Ultimately, Dr. Seely opined that Plaintiff was "unable to return to work." *Id.*

The ALJ discussed Dr. Seely's opinion and weight accorded thereto as follows:

> . . . The undersigned has also considered and afforded little weight to the medical source statement provided by Dr. James E. Seely, a treating physician. (Exhibit 8F). Dr. Seely's medical records do not support this statement as he did not document anything remarkable in his treatment notes with respect to the claimant's back impairment. In fact, the claimant is noted to have seen Dr. Seely primarily for acute illnesses, such as respiratory illnesses and medication refills. (*See* Exhibits 5F, 9F, and 12F). Moreover, Dr. Seelye's statement is not supported by Dr. Gomez's consultative examination. Additionally, at the hearing in this matter, the claimant's representative admitted on the record in the opening statement that this was an "aggressive statement" by the treating physician.

TR 20.

The ALJ continued: "In sum, . . . [t]here are no medical findings of sufficient severity to suggest that the claimant is unable to perform all work activity." *Id.*

In discussing the evidence of record, the ALJ recounted Plaintiff's medical imaging results and treatment history, stating:

> In terms of the claimant's alleged degenerative disc disease, the medical evidence indicates that the claimant's pain and limitations are not as severe as alleged. Specifically, an MRI of the lumbar

13

> spine in July 2010 revealed mild multilevel degenerative disc disease. An MRI of the cervical spine showed a small central protrusion at C4-C5, mildly effacing the anterior thecal sac and spondylosis. There was a bulge at C5-C6 causing mild to moderate central stenosis and mild bilateral foraminal stenosis, and mild spondylosis and bulge eccentric to the left at C6-C7 causing mild central and bilateral foraminal stenosis. (Exhibit 2F) The claimant underwent physical therapy in July 2010 through July 2010 with good improvement. (Exhibit 1F) On a new patient physical examination in August 2010, by neurologist, Dr. Allen Vaughn, the claimant had decreased range of motion in her low back and neck. In October 2010, at her last appointment with Dr. Vaughn, he indicated that the claimant underwent epidurals without improvement and he referred her for pain management. (Exhibit 3F) *However, the medical evidence of record reveals that the claimant failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal. In fact, the record reflects no actual treatment for this alleged impairment from October 2010 through July 2011, at which time the claimant had a consultative examination with Dr. Albert Gomez.* On examination, the claimant had moderate tenderness to palpation at the lumbar spine with flexion at 70 degrees and extension of 20 degrees. However, there was no tenderness to palpation of the cervical spine. The claimant could tandem walk normally and could stand on one leg. (Exhibit 4F)

TR 19-20 (*citing* 217-65, 266-77, 278-85, 286-90) (emphasis added).

As noted, a treating physician's opinion is accorded greater weight than other opinions when that opinion is supported by medically acceptable clinical and laboratory diagnostic techniques, and is consistent with the evidence of record. In the instant action, the ALJ found that Dr. Seeley's opinion contradicted other evidence in the record and was therefore entitled to "little weight." TR 20.

Dr. Seeley treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's according greater weight to his opinion than to other opinions, as long as that opinion was

supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. As can be seen in the ALJ's discussion quoted above, however, Dr. Seeley's MSS opinion contradicted his own treatment notes, as well as other evidence of record.

Contrary to Plaintiff's claim that the ALJ failed to provide "good reasons" for according "little weight" to Dr. Seeley's MSS opinion, the ALJ specifically articulated the reasons for her decision and discussed the evidence that contradicted Dr. Seeley's opinion. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord Dr. Seeley's evaluation controlling weight. Accordingly, Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any

response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

_____  
E. CLIFTON KNOWLES  
United States Magistrate Judge